IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

LISA McKINLEY TULLIS, #280307      )
                                   )
            Plaintiff,             )
                                   )
        v.                         )      CIVIL NO. 2:15-cv-92-MHT
                                   )              (WO)
CORIZON HEALTHCARE, et al.,        )
                                   )
            Defendants.            )

**RECOMMENDATION AND ORDER**

**I. INTRODUCTION**

Plaintiff Lisa McKinley Tullis ("Tullis") brings this action pursuant to 42 U.S.C. § 1983, claiming that while she was an inmate of the Tutwiler Correctional Facility ("Tutwiler") in Wetumpka, Alabama, medical providers were deliberately indifferent to her serious medical needs. Tullis filed an amended complaint that supersedes the claims in her original complaint, as ordered by the court. Doc. Nos. 9, 15, 16, 17, 18. Tullis named three defendants in her amended complaint: Nurse Carter, Nurse Jackson, and an unnamed Pharmacist. Doc. No. 16, at 2. Tullis did not clarify if she was suing defendants in their individual or official capacities. She sought compensation for "pain suffering, mental anguish, emotional stress." *Id.* at 4.

The court allowed the case to go forward against Defendants Corizon, Inc., Carter, and Jackson. Doc. No. 18. In accordance with orders of the court, Defendants Corizon ("Corizon"), LLC, Vicky Carter ("Carter"), and Lynda Jackson ("Jackson") filed an

answer, special reports, supplemental special report, and supporting evidentiary material in response to Tullis's allegations. Doc. Nos. 27, 30, 32.

The court informed Tullis that the defendants' special reports would, at some time, be treated as a dispositive motion; the court explained the proper manner in which to respond to a motion for summary judgment; and the court directed Tullis to respond to the defendants' reports. Doc. No. 33. Tullis responded. Doc. No. 34.

This case is now pending before the court on the defendants' motion for summary judgment. Upon consideration of the motion, the plaintiff's response to it, and the evidentiary materials filed in support and in opposition to the motion, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former Fed. R. Civ. P. 56 omitted; "issue" altered to "dispute" to reflect the stylistic change in the current rule). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including

2

pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (alterations added). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to Tullis to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to the case exists. *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it . . . ."); *see also Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (court considers facts pled in a plaintiff's sworn complaint when considering his opposition to summary judgment"). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263. The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-

3

50 (1986); Fed. R. Civ. P. 56(e). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice . . . ." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (per curiam). Only disputes involving material facts are relevant, and what is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248. To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation by the court, a pro se litigant does not escape the burden of sufficiently establishing a genuine dispute of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, a plaintiff's pro se status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Tullis fails to demonstrate a requisite genuine dispute of material so as to preclude summary judgment on her claims against the defendants. *See Matsushita*, 475 U.S. at 587.

### III. SUMMARY OF MATERIAL FACTS

Tullis is an inmate of the Alabama Department of Corrections ("ADOC") at Tutwiler and was incarcerated at Tutwiler during the time alleged in the complaint. Defendant Jackson is a registered nurse licensed in the State of Alabama and employed by Corizon as the Director of Nursing at Tutweiler. Doc. No. 32-1 at 2. Defendant Corizon holds a contract with the ADOC to provide health care to inmates in its facilities. *Id.* at 2-3. Defendant Carter is a licensed practical nurse in the State of Alabama and employed by Corizon as an LPN at Tutwiler. Doc. No. 32-2, at 1.

David Gams is a medical doctor licensed in the state of Alabama and employed by Corizon at Tutwiler. Doc. No. 30-1, at 2. He is not a defendant in this case, but he submitted an affidavit in support of the defendant's motion for summary judgment. On June 13, 2015, as part of the annual vaccination plan, defendant Carter administered a tuberculosis ("TB") skin test to Tullis. *Id.* at 3. Dr. Gams explains that the TB skin test determines whether a person has been exposed to TB. *Id.* The test consists of putting a small amount of TB protein (antigens) under the top layer of skin on the inner forearm. *Id.* If the person has been exposed to TB, the skin reacts by developing a firm red bump at the site within two days. *Id.* The TB antigens used in the test are called "purified protein derivative (PPD)." *Id.* at 4. The TB test cannot tell how long someone has been infected with TB or if the infection is inactive or transmittable. *Id.* Some people may react to the TB skin test even if they are not infected with TB. *Id.* Dr. Gams states, "[i]n general, there is no risk associated with repeated tuberculin skin test placements." *Id.*

Tullis's results were read on June 15, 2015, and showed a bump of ten millimeters. *Id.* A bump of ten or more millimeters is considered a positive reaction in residents and employees of high risk congregate settings. *Id.* Based on the positive reading, a follow-up TB skin test was performed on June 30, 2015. *Id.* at 5. The results were negative, but the results inadvertently were not entered into the annual vaccination record. *Id.* Because the follow-up test on June 30, 2015, was not documented, Tullis had a third TB skin test on October 12, 2015. *Id.* The result showed a bump of five millimeters. This indicates no further treatment or follow up is needed. *Id.* Dr. Gams avers, "[i]t is unfortunate that a false positive skin test was read of Ms. Tullis for the first TB test taken on June 13, 2015. However, false positive readings for TB are not unusual and the false reading did not result in any treatment of Ms. Tullis or the application of any medications." *Id.* He avers that because ADOC inmates are confined, Corizon takes seriously its testing and treatment of inmates for TB. *Id.* Dr. Gams states inmates are regularly tested in an attempt to control the spread of TB in ADOC facilities. *Id.* at 5. Dr. Gams states that Tullis did not suffer any negative ramifications from the false positive testing on June 13, 2015. *Id.* at 6. Tullis has not produced any medical evidence calling this conclusion into doubt.

Dr. Gams is aware of Tullis's allegations regarding her foot fungus treatment. *Id.* A nurse practitioner saw Tullis on April 10, 2015. A "punch biopsy" was taken of the area on the bottom of her foot and sent for analysis. *Id.* Dr. Gams saw Tullis on May 19, 2015. He ordered a foot soak twice a day in the health care unit along with prescriptions for

Clindamycin and Diflucan. *Id.* He renewed the prescriptions on June 8, 2015. *Id.* Tullis was referred to Dr. Mackey, a free-world dermatologist who saw Tullis on July 14, 2015. *Id.* The dermatologist noted patches of mild hyperkeratosis on the bottom of Tullis's foot. *Id.* Hyperkeratosis is the thickening of the outermost layer of skin. *Id.* The dermatologist prescribed medications for Tullis, which were filled for her. *Id.* at 6-7. The medical records support Dr. Gams's statements regarding Tullis's treatment. *Id.* at 10-46. In his October 27, 2015, affidavit, Dr. Gams indicates Tullis continued to be seen, that her foot condition was not ignored or delayed, and she was treated within the standard of care of physicians practicing medicine in the state of Alabama. *Id.* at 7.

　　Tullis states that Dr. Gams stuck her foot with a long needle to draw fluid out of the site and send it to a lab, and that nurses had to hold her leg still because the needle hurt her. Doc. No. 16, at 10. Tullis states that Dr. Mackey never touched her foot or ran any tests of it. He just asked her a few questions and prescribed medications. *Id.* at 11. When she returned to her institution, she told Dr. Gams about the visit, and he said he would get the prescriptions filled and she could get them. *Id.* When Tullis tried to get the medicine, it was not available, and Nurse Terry Hay, who is not a defendant in this case, gave Tullis a substitute pill, broken in half, and told her to return. *Id.* at 12. When she tried to return for more medicine, other nurses told Tullis she could not have a broken pill. Tullis eventually explained the situation to a sergeant who is not a defendant in this case. *Id.* Tullis states that ninety-six days passed before she saw an outside specialist about her foot

and, as of November 2015, her foot fungus had only gotten worse and not improved. Doc. No. 34, at 3-4. Tullis claims she was misdiagnosed with hyperkeratosis. *Id.* at 4.

## IV. DISCUSSION

### A. Eighth Amendment Claims Against Defendants in Their Official Capacities

Tullis does not indicate whether she sues the defendants in their official capacities or their individual capacities. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). State officials may not be sued in their official capacity unless the state has waived its Eleventh Amendment immunity or unless Congress has abrogated the state's immunity, and neither has occurred in this case. *See Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997) (citing *Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996) (discussing abrogation by Congress); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984) (discussing Eleventh Amendment immunity); *Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (Alabama has not waived Eleventh Amendment immunity)). In light of the foregoing, the defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for Tullis's Eighth Amendment claims seeking monetary damages from them in their official capacities. The claims for money damages brought against the defendants in their official capacities are therefore due to be dismissed.

## B. Eighth Amendment Claims Against Defendants in
## Their Individual Capacities[1]

### 1.  Introduction

To prevail on a claim concerning an alleged denial of adequate medical treatment, a prisoner must, at a minimum, show that a defendant acted with deliberate indifference to the prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986). This standard requires a prisoner to "show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). The inquiry includes objective and subjective components, and the prisoner must show "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255; *see also Farmer*, 511 U.S. at 837 (liability when defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"); *Johnson v. Quinones*, 145 F.3d 164,

---

[1] The defendants do not raise the defense of qualified immunity in their special reports, only in their answer.  Doc No. 27, at 3.  Because the court concludes that Tullis has not demonstrated a violation of her constitutional rights, the court pretermits any discussion of qualified immunity.  *See Saucier v. Katz*, 533 U.S. 194 (2001).

168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference). Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

A medical need is serious if it "'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Melton v. Abston*, 841 F.3d 1207, 1221-22 (11th Cir. 2016) (citations omitted). It also includes a medical need "'that, if left unattended, poses a substantial risk of serious harm.'" *Id.* at 1222 (citation omitted). "Severe pain that is not promptly or adequately treated can also constitute a serious medical need depending on the circumstances." *Id.* "A core principle of Eighth Amendment jurisprudence in the area of medical care is that prison officials with knowledge of the need for care may not, by failing to provide care, delaying care, or providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness." *McElligott*, 182 F.3d at 1257. Not responding to complaints of pain or providing so little pain medication "as to amount to no care at all" constitutes a constitutional violation, and qualified immunity is unavailable to such persons, who are "liable as if they had inflicted the pain themselves." *Id.* The length of delay and the reason for the delay matters, and even short delays are actionable if the medical need is sufficiently serious. *See Youmans v. Gagnon*, 626 F.3d 557, 564 (11th Cir. 2010).

Medical malpractice does not rise to the level of a constitutional violation; instead, the standard is that of subjective, reckless disregard of an objectively substantial risk of serious harm to an inmate. *See Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999). "Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (alterations added) (citations omitted). "A difference in medical opinion does not constitute deliberate indifference so long as the treatment is minimally adequate." *Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010) (citing *Harris*, 941 F.2d at 1504-05); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (inmate's desire for some other form of medical treatment does not constitute deliberate indifference violative of the Constitution); *see also Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."). "[A]s *Estelle* teaches, the question of whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995). "Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records." *Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010) (citing *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990)); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) (where video of high speed chase "utterly

11

discredited" plaintiff's sworn account of the events, court could disregard plaintiff's sworn account because it was "blatantly contradicted by the record, so that no reasonable jury could believe it"); *cf. Joassin v. Murphy*, 661 F. App'x 558, 559 (11th Cir. 2016) (where self-serving declarations from defendants and defendants' colleagues were not "so inherently credible as to 'blatantly contradict[ ]' and 'utterly discredit[ ]' plaintiff's self-serving testimony, summary judgment for defendants was not warranted). Finally, any claim that specific medical procedures have been impermissibly delayed requires an inmate to put verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment. *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188-89 (11th Cir. 1994), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

## 2. Defendants Carter and Jackson

Tullis claims Carter was deliberately indifferent to her serious medical needs when Carter administered a TB test at the wrong location on Tullis's arm. Tullis claims Jackson erroneously gave a second opinion regarding the TB test Carter administered. Tullis seeks damages "for pain suffering, mental anguish, emotional stress." Doc. No. 16, at 4.[2]

Tullis has failed to present any evidence which indicates that these defendants knew that the manner in which they treated Tullis when they administered the test created a substantial risk to Tullis's health and that with this knowledge consciously disregarded such risk to her health. Even assuming Jackson helped read the false positive result,

---

[2] Remarkably the defendants do not argue Tullis cannot bring suit for mental or emotional damages based on her failure to show a physical injury. *See* 42 U.S.C. § 1997e(e). The court concludes that Tullis's claims fail on the merits, and it does not address whether § 1997e(e) bars her claims.

Jackson's actions do not create a genuine issue about whether either defendant was deliberately indifferent to Tullis's serious medical needs. Carter and Jackson did not ignore Tullis's potential TB or fail to take steps to rectify the false positive results. It is evident that Carter and Jackson rendered treatment to Tullis in accordance with their professional judgment. At best, the administration of the TB test to the wrong site on Tullis's arm, resulting in a false positive result, was negligence which does not amount to an Eighth Amendment violation. *See Estelle*, 429 U.S. at 107. The record is therefore devoid of evidence, significantly probative or otherwise, showing that these defendants acted with deliberate indifference to Tullis's serious medical needs. Consequently, the record does not create a genuine dispute that Carter's or Jackson's treatment of Tullis, even if negligent, was so grossly inadequate "as to amount to no care at all" for a sufficiently serious medical need. *See McElligott*, 182 F.3d at 1257. Drawing all inferences in Tullis's favor, based on this summary judgment record no reasonable juror could conclude that defendant Carter intentionally administered the TB test with deliberate indifference to Tullis's serious medical needs, including her pain. *See Harper v. Lawrence County, Ala.*, 592 F.3d 1227, 1237 (11th Cir. 2010). As for Tullis's claim regarding her foot, the undisputed record demonstrates that Carter and Jackson were not involved in the treatment of it. Because Tullis fails to create a genuine question for trial on her Eighth Amendment claims against Carter and Jackson, they are entitled to judgment as a matter of law, and summary judgment is due to be granted in their favor. *See Matsushita*, 475 U.S. at 587.

## 2. Defendant Corizon

Defendant Corizon is a private company that has entered a contract with the state to provide medical care to inmates. "Generally, when the state contracts out its medical care of inmates, the obligations of the eighth amendment attach to the persons with whom the state contracts." *Howell v. Evans*, 922 F.2d 712, 723-24 (11th Cir.), *vacated pursuant to settlement*, 931 F.2d 711 (11th Cir. 1991), *and opinion reinstated sub nom. Howell v. Burden*, 12 F.3d 190 (11th Cir. 1994). Consequently, Corizon is treated as a state actor for purposes of § 1983. *Id.* at 724. Corizon employs Jackson and Carter. A supervisor may not be held liable solely on the basis of respondeat superior. *Cottone*, 326 F.3d at 1360. Liability against Corizon may be imposed only if the plaintiff shows the organization instigated or adopted a policy that violated the plaintiff's constitutional rights. *See id.* ("The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. Alternatively, the causal connection may be established when a supervisor's custom or policy ... result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.") (quotation marks and citations omitted).

Viewing the evidence in the light most favorable to Tullis, there is no showing on this record that Corizon created or approved of a policy to deny her care or improperly administer TB tests that violated Tullis's Eighth Amendment rights. A private entity

providing medical care to inmates may be directly liable under § 1983 if the action alleged to be unconstitutional is undertaken pursuant to that entity's policy or custom. *See Brennan v. Comm'r, Alabama Dep't of Corr.*, 626 F. App'x 939, 943 n.2 (11th Cir. 2015) (citing *Buckner v. Toro*, 116 F.3d 450, 452-53 (11th Cir. 1997)); *see also Salas v. Tillman*, 162 F. App'x 918, 922 (11th Cir. 2006) ("an official also may be liable where a policy or custom that he established or utilized resulted in deliberate indifference to an inmate's constitutional rights"). As previously discussed, there is no genuine dispute on this record about whether Carter or Jackson violated Tullis's Eighth Amendment rights concerning the TB test. As for the treatment of her foot fungus, this court cannot second-guess the professional medical treatment Tullis received in the absence of evidence that the treatment was inappropriate. Dr. Gams and other medical care providers including a dermatological specialist treated Tullis's foot. Tullis may have preferred different medications or referral to a specialist, but the undisputed medical records demonstrate that Dr. Gams provided Tullis with continuous medical review and treatment. Whether medical personnel "should have employed additional . . . forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545-46 (quoting *Estelle*, 429 U.S. at 107); *see also Adams*, 61 F.3d at 1546 (inmate's allegation that his prison physician did not diligently pursue alternative means of treating condition "did not 'rise beyond negligence'. . . to the level of deliberate indifference") (citations omitted). Nothing in the record suggests

Corizon had a policy to violate Tullis's constitutional rights. Corizon is therefore entitled to judgment as a matter of law.

### C. Medical Malpractice

Plaintiff asserts claims of medical malpractice.  Under Alabama law, "any action for injury or damages or wrongful death . . . against a health care provider for breach of the standard of care" is governed by the Alabama Medical Liability Act ("AMLA"). Ala. Code § 6-5-548(a); *see also M. C. v. Tallassee Rehab., P.C.*, 201 So. 3d 525, 533 (Ala. 2015). Among other things, in a medical malpractice case under Alabama law, "the plaintiff ordinarily must present expert testimony from a 'similarly situated health-care provider' as to (1) 'the appropriate standard of care,' (2) a 'deviation from that standard [of care],' and (3) 'a proximate causal connection between the [defendant's] act or omission constituting the breach and the injury sustained by the plaintiff." *Lyons v. Walker Reg'l Med. Ctr.*, 791 So. 2d 937, 942 (Ala. 2000) (quoting *Pruitt v. Zeiger*, 590 So.2d 236, 238 (Ala. 1991)). On the issue of causation, a plaintiff must "provide evidence indicating that the negligence alleged is the proximate and probable cause of [the plaintiff's] injury; a mere possibility or one possibility among others is insufficient to meet the burden of proof." *Graves v. Brookwood Health Servs., Inc.*, 43 So. 3d 1218, 1223 (Ala. 2009) (emphasis in original) (citations omitted); *see also Murphy v. Precise*, No. 1:16-CV-143-WKW-DAB, 2017 WL 2929374, at *3 (M.D. Ala. Apr. 28, 2017) (discussing medical malpractice under Alabama law), *R&R adopted*, No. 1:16-CV-143-WKW, 2017 WL 2927821 (M.D. Ala. July 7, 2017). A plaintiff must prove the alleged negligence through expert testimony unless an

understanding of the alleged lack of due care or skill requires only common knowledge or experience. *McAfee by & through McAfee v. Baptist Medical Ctr.*, 641 So. 2d 265, 267 (Ala. 1994).

Here, Tullis has come forward with no expert testimony from a similarly situated health-care provider regarding the proper standard of care, the deviation from that standard of care, or the proximate causal connection between the breach of a standard of care and Tullis's alleged injuries. Understanding of the proper testing for TB and Tullis's foot ailment requires more than common knowledge. Tullis makes only conclusory statements regarding the negligence and incompetence of various health care providers. Her conclusory statements, in the absence of supporting evidence, are insufficient to create a genuine dispute regarding her malpractice claims. *See Holifield*, 115 F.3d at 1564 n.6; *see also Whitehead*, 403 F. App'x at 403 (11th Cir. 2010) ("Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records."). Summary judgment is therefore due to be granted the defendants on Tullis's medical malpractice claims. It is further

ORDERED that the plaintiff's motion for status is (Doc. # 46) is DENIED as moot

## V. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendant's motion for summary judgment be GRANTED;

2. Judgment be GRANTED in favor of the defendants.

3. The plaintiff's claims be dismissed with prejudice.

4. Costs be taxed against the plaintiff.

It is further

ORDERED that on or before February 8, 2018, the parties may file objections to the Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a de novo determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done this  day of January 25, 2018.

/s/Charles S. Coody
_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE